IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAYLYN WILLIAMS, ) | |
| Petitioner, ) | Civil Action No. 18-7 Erie |
| ) | |
| v. ) | |
| ) | Judge Susan Paradise Baxter |
| FCI MCKEAN, WARDEN, ) | |
| Respondent. ) | |

**MEMORANDUM**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by federal prisoner Braylyn Williams ("Petitioner"), pursuant to 28 U.S.C. § 2241. (ECF No. 4). He contends that the Bureau of Prisons (the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329 (1992), erred in computing his sentence. For the reasons set forth below, the Court will deny the petition.

**I.**

**A.     Relevant Background**

On February 11, 2010, Petitioner was arrested by local law enforcement in Youngstown, Ohio, in connection with a state criminal offense that occurred on December 27, 2009. The State of Ohio charged him with the crime of felonious assault and he was transported to the Mahoning County Justice Center. Upon his arrest, Petitioner was in the "primary custody" (sometimes referred to as "primary jurisdiction") of the State of Ohio. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to

---

[1] On September 14, 2018, the undersigned was sworn in as a United States District Judge. This action was reassigned to this Court's docket on September 21, 2018.

1

prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012) (per curiam); Elwell v. Fisher, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. See, e.g., George, 463 F.App'x at 138 n.4

Petitioner pleaded guilty to felonious assault in the Court of Common Pleas of Mahoning County (the "state court") and on June 17, 2010, the state court sentenced him to a five-year term of imprisonment. The state court also ordered that he receive 126 days of sentencing credit.[2]

The following year, on March 28, 2011, the United States District Court for the Northern District of Ohio issued a federal writ of habeas corpus ad prosequendum that directed the warden of the state correctional institution at which Petitioner was serving his state sentence to produce him in federal court for the processing of federal criminal charges. Thereafter, the United States Marshals Service ("USMS"), borrowed him from state custody in accordance with the federal writ. Although Petitioner was temporarily transferred to the physical custody of federal authorities pursuant to the federal writ, the

---

[2] "Although not expressly stated, the 126 days of state credit equals the amount of time [Petitioner] was in state/local custody between February 11, 2010 [the date of his arrest], and June 16, 2010 [the day before the state court imposed its sentence]." ECF No. 9-4 at 4.

State of Ohio maintained primary custody over him. That is because a prisoner detained pursuant to a writ of habeas corpus ad prosequendum remains in the primary custody of the sending sovereign unless and until it relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). See also Elwell, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus ad prosequendum, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction.") The receiving sovereign–in this case, the federal government–is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id.

Petitioner was convicted on his federal charges and on August 20, 2012, the federal district court sentenced him to a 110-month term of imprisonment. It also ordered that the federal sentence run concurrently with the state sentence that Petitioner was serving. The next day, the USMS returned Petitioner to state authorities in satisfaction of the federal writ.

On January 30, 2015, the State of Ohio released Petitioner to a federal detainer and he was transported to BOP custody. The BOP subsequently designated him to FCI McKean, a federal correctional institution located within the territorial boundaries of this Court.

The BOP has determined, in accordance with Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990) and its own policies, that Petitioner receive what is sometimes referred to as a "retroactive concurrent" or "nunc pro tunc" designation pursuant to 18 U.S.C. § 3621(b).[3] The BOP's determination permitted it to calculate Petitioner's federal sentence as having commenced when he was in the primary custody of the State of Ohio at the state correctional institution. Specifically, pursuant to 18 U.S.C. § 3585(a), the

---

[3] In Barden, the United States Court of Appeals for the Third Circuit discussed the BOP's authority to effectuate the service of concurrent federal and state sentences in circumstances when the intent of the federal sentencing court or the goals of the criminal justice system would make the exercise of that authority appropriate. See also BOP Program Statement ("PS") 5160.05, Pages 5-7.

BOP has calculated Petitioner's federal sentence to have commenced on August 20, 2012, which is the date the federal district court imposed it. (ECF No. 9-4 at 6-7).

The BOP also has determined that, in accordance with 18 U.S.C. § 3585(b), Petitioner is not entitled to any sentencing credit for the time he spent in custody prior to the commencement of his federal sentence on August 20, 2012.[4] (Id. at 7-9). However, the BOP did grant Petitioner 126 days of "qualified non-federal presentence credit" in accordance with Willis v. United States, 438 F.2d 923 (5th Cir. 1971). (Id.) That credit accounts "for the 126 days [Petitioner] served prior to the commencement of his federal sentence from February 11, 2010, (the date he was placed in official detention), through June 16, 2010, (the day before the five year non-federal sentence commenced). (Id. at 9).

In the petition for a writ of habeas corpus (ECF No. 4) that Petitioner filed with this Court, he contends that he is entitled to additional credit against his federal sentence. Respondent filed the answer and relevant records (ECF No. 9), and Petitioner filed a reply (ECF No. 10).

**B.    Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). 28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010), such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden, 921 F.2d at 478-79. Such petitions are filed in the federal court of the judicial district where the federal prisoner is incarcerated. Thus, this Court has jurisdiction under § 2241 to consider Petitioner's claim that the BOP erred in computing his sentence. A

---

[4] Sentencing credit given in accordance with § 3585(b) is known as "prior custody credit."

4

federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3).

**C.     Discussion**

The following federal statutes are relevant to the evaluation of the petition: 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; and, 18 U.S.C. § 3585(b), which governs the amount of sentencing credit that an inmate may receive for time served in official detention prior to the commencement of his federal sentence. The BOP's policies regarding sentence computation are set forth in PS 5880.28, Sentence Computation Manual ("PS 5880.28"). Also relevant to this case is PS 5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05").[5]

**1.     Calculation of the date upon which a federal sentence commences**

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It provides:

(a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano, 307 F.3d at 126. The BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier

---

[5] The BOP policies at issue in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Although they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984), they are entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)).

than the date on which it is imposed."). See, e.g., Rashid v. Quintana, 372 F.App'x 260, 262 (3d Cir. 2010) (per curiam) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Unites States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998), which stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge,to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a stateسسsentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it

6

relinquishes its priority by, *e.g.*, granting bail, dismissing the charges, releasing the individual to parole or at the expiration of his sentence. See, e.g., George, 463 F.App'x at 138 n.4

The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

2. If the inmate is in the primary custody of the state and his federal sentencing sentence is *concurrent* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive* to any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

The second scenario is what occurred in Petitioner's case. He was in the primary custody of the State of Ohio on the date his federal sentence was imposed. Because his federal sentence is concurrent with his state sentence, the BOP, in accordance with its policies and procedures, designated the state facility where Petitioner was serving his state sentence as the official detention facility at which he commenced service of his federal sentence. As a result, it was able to compute his federal sentence to have commenced on August 20, 2012, which is the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12. *The BOP thus commenced the Petitioner's sentence on the earliest date that it could commence.*

7

### 2. Calculation of prior custody credit under § 3585(b)

Section 3585(b) governs the amount of credit an inmate is entitled to receive for time served in official detention prior to the commencement of his federal sentence. It provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

(1)  as a result of the offense for which the sentence was imposed; or

(2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*That has not been credited against another sentence.*

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). The BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. See, e.g., Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

Here, the time Petitioner served in official detention from the date of his arrest (February 11, 2010) through August 19, 2012 (the date before his federal sentence commenced) was credited against his state sentence. (ECF No. 9-4 at 8). Therefore, the BOP determined that he is not entitled to any prior custody credit under § 3585(b). Id. There is no basis for this Court to disturb the BOP's determination in that regard.

The BOP recognizes a limited exception to § 3585(b)'s rule against double credit in accordance with Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993) and Willis v. United States, 438 F.2d 923 (5th Cir. 1971). Respondent attached to his answer the Declaration of Deborah Colston, who is a Management Analyst with the BOP. Colston's duties include auditing and reviewing inmate sentence computations.

8

She explained why the BOP determined that Petitioner was not entitled to any Kayfez credit, and also why he received 126 days of Willis credit:

> 14. In this case, [Petitioner] is not eligible to receive qualified non-federal presence credit under Kayfez. The raw EFT of the non-federal sentence (June 17, 2010, plus five years) is June 16, 2015, and the raw EFT of the federal term is (August 20, 2012, plus 110 months) October 19, 2021. Because the non-federal raw EFT is earlier than the federal raw EFT, [Petitioner] is not eligible to receive qualified non-federal presence credit under the Kayfez exception.
>
> 15. However, because the non-federal raw EFT is earlier than the federal raw EFT, the qualified non-federal presence credit rule that was established in Willis…was applied. Under Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual, qualified non-federal presence credit under Willis[ ] is available for all time in official detention on or after the date of the federal offense conduct until the date the first sentence commenced, whether that sentence is federal or non-federal.
>
> 16. [Petitioner] was granted Willis qualified non-federal presence credit for the 126 days he served prior to the commencement of his federal sentence from February 11, 2010, (the date he was placed in official detention), through June 16, 2010, (the day before the five year non-federal sentence commenced).

(Id. at 8-9). Petitioner has not demonstrated to this Court that he is entitled to any additional credit against his federal sentence under either Kayfez or Willis.

## II.

Based upon all of the foregoing, the Court will deny the petition for a writ of habeas corpus.[6] An appropriate Order follows.

Dated: March 11, 2019

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

---

[6] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000) (en banc), abrogated on other grounds by Gonzalez v. Thaler, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B).